## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GLOBAL CLEAN ENERGY | ) | Case No. 25-90113 (ARP) |
| HOLDINGS, INC., *et al.*,[1] | ) |  |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

### DEBTORS' MOTION
### FOR ENTRY OF AN ORDER
### (I) APPROVING THE ADEQUACY OF THE
### DISCLOSURE STATEMENT, (II) APPROVING
### THE SOLICITATION AND NOTICE PROCEDURES WITH
### RESPECT TO CONFIRMATION OF THE DEBTORS' PROPOSED JOINT
### CHAPTER 11 PLAN, (III) APPROVING THE FORMS OF BALLOTS AND
### NOTICES IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN
### DATES WITH RESPECT THERETO, AND (V) GRANTING RELATED RELIEF

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on May 23, 2025, at [●] a.m./p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Perez's home page. The meeting code is "JudgePerez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Perez's homepage. Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/GCEHoldings. The location of Debtor Global Clean Energy Holdings, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is: 6451 Rosedale Highway, Bakersfield, California 93308.

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state as follows in support of this motion (this "<u>Motion</u>"):[2]

### Preliminary Statement[3]

1.     On April 16, 2025 (the "<u>Petition Date</u>"), the Debtors and the Consenting Stakeholders entered into a restructuring support agreement (the "<u>Restructuring Support Agreement</u>").  The material terms of the Restructuring Support Agreement, as embodied in the Plan, provide for the recapitalization of the Company's balance sheet through the issuance of the New Common Equity, the New Preferred Equity, and the Exit Term Loan Facilities to Holders of Claims, and the entry into the Exit Facilities.  The transactions contemplated by the Restructuring Support Agreement (the "<u>Restructuring Transactions</u>") and the terms thereunder, including the milestones that dictate the outside dates by which the Debtors must file and seek the Court's approval of certain key documents, are set forth in greater detail in the Plan and the accompanying Disclosure Statement.

2.     Having spent several months negotiating with the Consenting Stakeholders, the Debtors are confident that the Restructuring Support Agreement and the Plan, including the Restructuring Transactions contemplated thereunder, best position the Debtors to successfully achieve a value maximizing solution for the benefit of the Debtors, their estates, and their

---

[2]     A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Noah Verleun, Chief Executive Officer of Global Clean Energy Holdings, Inc., in Support of the Debtors' Chapter 11 Petitions* (the "<u>Verleun First Day Declaration</u>") and the *Declaration of John Walsh, Managing Director of Alvarez & Marsal North America, LLC, in Support of the Debtors' First Day Motions* (the "<u>Walsh First Day Declaration</u>" and together with the Verleun First Day Declaration the "<u>First Day Declarations</u>"), filed contemporaneously herewith and incorporated by reference herein.  Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declarations.

[3]     Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed to them in the First Day Declarations or the *Joint Chapter 11 Plan of Reorganization of Global Energy Holdings, Inc. and its Debtor Affiliates* (the "<u>Plan</u>"), filed contemporaneously herewith, as applicable.

stakeholders.  The milestones contemplated by the Restructuring Support Agreement and the Plan allow the Debtors to move through these Chapter 11 Cases at a steady, efficient pace.

3.     To accomplish this goal and advance these Chapter 11 Cases in accordance with the milestones provided under the Restructuring Support Agreement, the Debtors now seek approval of the Disclosure Statement, the related solicitation procedures and materials, and the Confirmation Schedule (as defined herein).  For the reasons set forth herein, the Debtors respectfully submit that the relief requested in this Motion should be approved.

## **Relief Requested**

4.     The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"), granting the following relief:

a.     ***Adequacy of the Disclosure Statement***.  Approving the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Global Clean Energy Holdings, Inc., and its Debtor Affiliates* [Docket No. [●]] (as amended, supplemented, or otherwise modified from time to time, consistent with the terms thereof, the "Disclosure Statement"), attached to the Order as Schedule 1, as containing "adequate information" as required by section 1125 of the Bankruptcy Code;

b.     ***Solicitation and Voting Procedures***.  Approving procedures for (i) soliciting, receiving, and tabulating votes to accept or reject the Plan, (ii) voting to accept or reject the Plan, and (iii) filing objections to the Plan (the "Solicitation and Voting Procedures"), substantially in the form attached to the Order as Schedule 2;

c.     ***Ballots***.  Approving the forms of ballots for Holders of Claims entitled to vote to accept or reject the Plan, substantially in the forms attached to the Order as Schedules 3A, 3B, 3C, and 3D (each, a "Ballot" and collectively, the "Ballots");

d.     ***Non-Voting Status Notices and Opt-Out Forms***.  Approving (i) the form of notice applicable to Holders of Claims (A) that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan, (B) Holders of Claims or Interests who are, pursuant to Section 1126(g) of the Bankruptcy Code, conclusively deemed to reject the Plan; and (C) Holders of Claims that are subject to a pending objection by the Debtors and who are not entitled to vote the disputed portion of such Claim (such notice to each of the foregoing

(A)–(C), a "<u>Non-Voting Status Notice</u>," and collectively, the "<u>Non-Voting Status Notices</u>"), substantially in the forms attached to the Order as Schedules <u>4</u>, <u>5</u>, and <u>6</u>; and (ii) the Opt-Out form accompanying each Non-Voting Status Notice (the "<u>Opt-Out Form</u>") enabling such Holders to elect to opt out of the releases granted under the Plan;

e.    ***Solicitation Packages***.    Finding that the solicitation materials and documents included in the solicitation packages (the "<u>Solicitation Packages</u>") that will be sent to Holders of Claims entitled to vote to accept or reject the Plan comply with Bankruptcy Rules 2002(b) and 3017(d);

f.    ***Cover Letter***.    Approving the form of letter that the Debtors will send to Holders of Claims entitled to vote to accept or reject the Plan, recommending that such parties vote in favor of the Plan (the "<u>Cover Letter</u>"), substantially in the form attached to the Order as Schedule <u>7</u>;

g.    ***Confirmation Hearing Notice***.    Approving the form and manner of notice of the hearing to be held by the Court to consider Confirmation of the Plan (the "<u>Confirmation Hearing</u>," and the notice thereof, the "<u>Confirmation Hearing Notice</u>") pursuant to section 1129 of the Bankruptcy Code, substantially in the form attached to the Order as Schedule <u>8</u>;

h.    ***Plan Supplement Notice***.    Approving the form of notice of the filing of the Plan Supplement, substantially in the form attached to the Order as Schedule <u>9</u> (the "<u>Plan Supplement Notice</u>");

i.    ***Assumption and Rejection Notices***.    Approving the form of notices to counterparties to Executory Contracts and Unexpired Leases that will be assumed, assumed and assigned, or rejected pursuant to the Plan (the "<u>Assumption Notice</u>" and the "<u>Rejection Notice</u>," respectively), substantially in the forms attached to the Order as Schedules <u>10</u> and <u>11</u>, respectively; and

j.    ***Confirmation Schedule***.    Establishing the following dates and deadlines with respect to Confirmation of the Plan, subject to modification as necessary (the "<u>Confirmation Schedule</u>"):

| Event | Proposed Date and Time (if any) | Description |
|---|---|---|
| Disclosure Statement Objection Deadline | May 16, 2025, at 4:00 p.m., prevailing Central Time | Deadline by which parties in interest may object to the Disclosure Statement and adequacy thereof. |

| Event | Proposed Date and Time (if any) | Description |
|---|---|---|
| Voting Record Date | May 16, 2025 | Date for determining (i) which Holders of Claims in the Voting Classes are entitled to vote to accept or reject the Plan and (ii) whether Claims have been properly assigned or transferred to an assignee under Bankruptcy Rule 3001(e) such that the assignee or transferee, as applicable, can vote to accept or reject the Plan as the Holder of a Claim (the "Voting Record Date"). |
| Disclosure Statement Hearing Date | May 23, 2025, at [●] [a.m. / p.m.], prevailing Central Time, subject to the Court's availability | Date of the hearing at which the Court will consider the relief requested in this Motion. |
| Solicitation Deadline[4] | Three (3) business days after the Order is entered (or as soon as reasonably practicable thereafter) | Deadline by which the Debtors must distribute Solicitation Packages, including the Ballots, to Holders of Claims entitled to vote to accept or reject the Plan. |
| Publication Deadline | Five (5) business days following the entry of the order approving the Disclosure Statement (or as soon as reasonably practicable thereafter) | Date by which the Debtors will submit the Confirmation Hearing Notice in a format modified for publication (the "Publication Notice," and such date, the "Publication Deadline"). |
| Plan Supplement Deadline | Seven (7) days prior to the Plan Objection Deadline (as defined herein) (or as soon as reasonably practicable thereafter) | Date by which the Debtors shall file the Plan Supplement. |
| Voting Deadline | June 25, 2025, at 4:00 p.m., prevailing Central Time | Deadline by which Holders of Claims in the Voting Classes may vote to accept or reject the Plan pursuant to Bankruptcy Rule 3017(c), and by which all Ballots must be properly executed, completed, and delivered as specified in the Solicitation and Voting Procedures (the "Voting Deadline"). |
| Plan Objection Deadline | June 25, 2025, at 4:00 p.m., prevailing Central Time | Deadline by which any objections to Confirmation of the Plan (including objections to any assumption or rejection of an Executory Contract or Unexpired Lease thereunder or as set forth in the Plan Supplement) must be filed (the "Confirmation Objection Deadline"). |

---

[4]   With respect to Holders of Claims that are entitled to vote to accept or reject the Plan and that file Proofs of Claim or, in the absence of filed Proofs of Claim, as to which the Debtors file relevant schedules after the Voting Record Date but before the Claims Bar Date, the Debtors and Claims and Noticing Agent will distribute Solicitation Packages as soon as reasonably practicable following receipt of such Proof of Claim or filing of such Schedules.

| Event | Proposed Date and Time (if any) | Description |
|---|---|---|
| Opt-Out Deadline | June 25, 2025, at 4:00 p.m., prevailing Central Time | Deadline by which any Opt-Out Forms must be received as specified in the Solicitation and Voting Procedures. |
| Deadline to File Voting Report | Two (2) business days before the Confirmation Hearing Date | Date by which the report tabulating votes on the Plan (the "Voting Report") shall be filed with the Court. |
| Confirmation Hearing Date | July 1, 2025, at [●] [a.m. / p.m.]., prevailing Central Time, subject to the Court's availability | Date of the hearing at which the Court will consider Confirmation of the Plan. |

## Jurisdiction and Venue

5.     The United States District Court for the Southern District of Texas (the "District Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the Southern District of Texas (the "Court") pursuant to 28 U.S.C. § 157 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent to the Court's entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.     The bases for the relief requested herein are sections 105, 363, 365, 502, 1123, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rules 2002, 3001, 3016, 3017, 3018, 3020 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## Background

8.     Global Clean Energy Holdings, Inc. (together with its Debtor and non-Debtor subsidiaries, "Global Clean" or the "Company") is a vertically integrated company focused on producing ultra-low carbon renewable fuels from its patented varieties of *Camelina sativa* ("Camelina"), a nonfood feedstock.  This unique "farm to fuel" business model allows Global Clean to achieve greater efficiencies throughout the value chain, lower the carbon intensity of its finished product, and provide a solution to the "food versus fuel" dilemma through its focus on a feedstock that does not compete with food.  Global Clean currently owns the world's largest portfolio of patented Camelina genetics and has established operations across the globe to plant, process, transport, and refine their Camelina into biomass feedstock, biofuel oil, and renewable fuel, including at its state-of-the-art renewable fuels facility in Bakersfield, California (the "Bakersfield Facility").  Global Clean employs or retains over 150 people and, in 2024, managed contracts with hundreds of growers around the world that planted more than 124,000 acres of Camelina in support of its worldwide operations.

9.     On the Petition Date, each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases is set forth in greater detail in the First Day Declarations, filed contemporaneously herewith and incorporated by reference herein.

10.     The Debtors have filed a motion contemporaneously herewith requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

## Summary of the Plan

11.     The Plan and the Disclosure Statement describe in detail the Restructuring Transactions contemplated under the Plan and the projected recoveries provided to Holders of Claims and Interests.  The following summarizes the distributions to be made to Holders of Claims or Interests under the Plan.[5]

| Class | Claim/ Interest | Treatment of Claim/Interest |
|---|---|---|
| 1. | Other Secured Claims | On the Effective Date, each Holder of an Allowed Other Secured Claim shall receive, unless otherwise agreed to by such Holder: <br><br> (i)   in full and final satisfaction of such Allowed Other Secured Claim, (A) payment in full in Cash in an amount equal to its Allowed Other Secured Claim or (B) delivery of the collateral securing its Allowed Other Secured Claim; <br><br> (ii)   Reinstatement of its Allowed Other Secured Claim; or <br><br> (iii)   such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code. |
| 2. | Other Priority Claims | On the Effective Date, each Holder of an Allowed Other Priority Claim, in full and final satisfaction of such Allowed Other Priority Claim, unless otherwise agreed to by such Holder, shall be paid in full in Cash on the Effective Date or in the ordinary course of business as and when due, or otherwise receive treatment consistent with the provisions of section 1129(a) of the Bankruptcy Code. |
| 3. | Prepetition RCF Claims | On the Effective Date, each Holder of an Allowed Prepetition RCF Claim shall receive, in full and final satisfaction of such Allowed Prepetition RCF Claim, unless otherwise agreed by such Holder (subject to the consent rights set forth in Section 3.02 of the Restructuring Support Agreement), and solely to the extent such Allowed Prepetition RCF Claim is not converted into a DIP Claim, conversion of such Allowed Prepetition RCF Claim into the Exit RCF Facility. |
| 4. | Prepetition Term Loan Claims | On the Effective Date, each Holder of an Allowed Prepetition Term Loan Claim shall receive, in full and final satisfaction of such Allowed Prepetition Term Loan Claim, unless otherwise agreed by such Holder (subject to the consent rights set forth in Section 3.02 of the Restructuring Support |

---

[5]   The summary of the Plan provided herein is intended to provide a summary of distributions under the Plan.  To the extent there are any inconsistencies between this summary and the Plan, the Plan, and Plan Supplement, as applicable, shall govern.

| Class | Claim/ Interest | Treatment of Claim/Interest |
|---|---|---|
| | | Agreement), and solely to the extent such Allowed Prepetition Term Loan Claim is not converted into a DIP Claim, its *Pro Rata* share of: |
| | | (i)      the Takeback Debt apportioned to Holders of Allowed Prepetition Term Loan Claims, on the terms and conditions set forth in the Exit Facilities Term Sheet; |
| | | (ii)      4/9ths (44.4%) of the New Preferred Equity, in accordance with the terms and conditions of the Governance Term Sheet; and |
| | | (iii)      100% of the New Common Equity. |
| 5. | Prepetition EPC Claims | On the Effective Date, each Holder of an Allowed Prepetition EPC Claim shall receive, in full and final satisfaction of such Allowed Prepetition EPC Claim, unless otherwise agreed by such Holder (subject to the consent rights set forth in Section 3.02 of the Restructuring Support Agreement), its *Pro Rata* share of: <br><br> (i)      the Takeback Debt apportioned to Holders of Allowed Prepetition EPC Claims, on the terms and conditions set forth in the Exit Facilities Term Sheet; and <br><br> (ii)      5/9ths (55.6%) of the New Preferred Equity, in accordance with the terms and conditions of the Governance Term Sheet. |
| 6. | General Unsecured Claims | On the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Allowed General Unsecured Claim, its *Pro Rata* share of the GUC Cash Pool; *provided* that the GUC Cash Pool shall be reduced dollar-for-dollar for the Allowed professional fees and expenses incurred by any official committee of unsecured creditors appointed in the Chapter 11 Cases; *provided*, further, that if the Class of General Unsecured Claims votes to accept the Plan, the Holders of Allowed Prepetition Term Loan Claims and the Holders of Allowed Prepetition EPC Claims have agreed to waive, solely for purposes of distributions from the GUC Cash Pool, entitlement to any deficiency claim with respect to any portion of their Claims that is deemed unsecured (*provided* that any such unsecured portion is not the result of a challenge by any party of any Liens or security interests asserted by the Holders of Term Loan Claims or the Holders of Prepetition EPC Claims, as applicable). |
| 7. | Section 510(b) Claims | On the Effective Date, any Section 510(b) Claims (if any) shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and the Holders of such Claims will not receive any distribution on account of such Claims. |
| 8. | Intercompany Claims | On the Effective Date, Intercompany Claim shall be (i) Reinstated or (ii) set off, settled, distributed, contributed, cancelled, converted to equity, or released without any distribution on account of such Allowed Intercompany Claim, or otherwise addressed at the option of the Reorganized Debtors, without any distribution. |
| 9. | Intercompany Interests | On the Effective Date, Intercompany Interests shall be (i) Reinstated or (ii) set off, settled, distributed, contributed, cancelled, and released without any distribution on account of such Allowed Intercompany Interest, or otherwise addressed at the option of the Reorganized Debtors. |
| 10. | GCEH Existing Interests | On the Effective Date, each Holder of an Allowed GCEH Existing Interest shall, in full and final satisfaction, settlement, release, and discharge of such Allowed GCEH Existing Interest have its Allowed GCEH Existing Interest be cancelled, released, extinguished, and of no further force or effect, and |

| Class | Claim/ Interest | Treatment of Claim/Interest |
|-------|-----------------|------------------------------|
|       |                 | such Holder shall not receive any distribution, property, or other value on account of such Allowed GCEH Existing Interest. |
| 11.   | Subsidiary Existing Interests | On the Effective Date, each Allowed Subsidiary Existing Interest shall, in full and final satisfaction, release, and discharge of such Allowed Subsidiary Existing Interest, be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Allowed Subsidiary Existing Interests shall not receive any distribution, property, or other value under the Plan on account of such Allowed Subsidiary Existing Interests. |

12.     In accordance with the foregoing description of the treatment of Holders of Claims and Interests, the Debtors intend to solicit the votes of only those Holders of Claims that are entitled to vote to accept or reject the Plan.  The following chart summarizes the Classes of Claims and Interests under the Plan and their respective voting rights:

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Prepetition RCF Claims | Impaired | Entitled to Vote |
| Class 4 | Prepetition Term Loan Claims | Impaired | Entitled to Vote |
| Class 5 | Prepetition EPC Claims | Impaired | Entitled to Vote |
| Class 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 7 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Deemed to Reject) |
| Class 9 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Deemed to Reject) |
| Class 10 | GCEH Existing Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 11 | Subsidiary Existing Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

13.     Based on the foregoing (and as discussed in greater detail herein), the Debtors are proposing to solicit votes to accept or reject the Plan from Holders of Claims in Classes 3, 4, 5 and 6 (each a "Voting Class," and collectively, the "Voting Classes").  The Holders of Claims in the Voting Classes are Impaired under the Plan and may, in certain circumstances, receive a

distribution under the Plan.  Accordingly, Holders of Claims or Interests in the Voting Classes have the right to vote to accept or reject the Plan.  The Debtors are proposing ***not*** to solicit votes from Holders of Claims in Classes 1, 2, 7, 8, 9, 10, and 11 (each, a "<u>Non-Voting Class</u>," and collectively, the "<u>Non-Voting Classes</u>").

<b><u>Noticing Plan</u></b>

14.     The Debtors have designed a comprehensive noticing plan meant to afford all parties in interest, including all parties on the creditor matrix, all Required Consenting Stakeholders, DIP Lenders, and equity holders of record as of the Voting Record Date, the maximum notice practical under the circumstances and thus the maximum opportunity to cast their votes or be heard in connection with Confirmation of the Plan.  The Debtors' noticing matrix encompasses approximately 4,300 parties, including, but not limited to, the Debtors' current and former employees, suppliers, vendors, taxing authorities, insurers, and other similar parties in interest.

15.     To effectuate their robust noticing plan, the Debtors propose to, among other things:

- distribute the Solicitation Packages (as described in more detail below) to Holders in voting Classes in the form and manner described herein;

- distribute the Non-Voting Status Notices and the Opt-Out Forms to Holders of Claims or Interests in the Non-Voting Classes in the form and manner described herein;

- serve the Confirmation Hearing Notice by first-class mail to all approximately 4,300 parties listed on the Debtors' noticing matrix, which will include information regarding the Confirmation Hearing, deadlines related thereto, and the releases contained in the Plan;

- publish the Confirmation Hearing Notice in *The New York Times* (national edition) and *The New York Times* (international edition); and

- provide notice of a hotline and restructuring website that parties are able to access for additional information.

### A.    Notice to Voting Classes.

16.    As soon as reasonably practicable upon entry of the Order, the Debtors, with the assistance of Epiq Corporate Restructuring ("Epiq" or the "Claims and Noticing Agent"), will commence the solicitation of votes on the Plan by causing the Solicitation Packages to be distributed as hard copies via first-class mail or in electronic format (*i.e.*, on a flash drive or via email) to the Voting Classes, as applicable.  The Solicitation Packages, excluding the Ballots, will also be available for review and download, free of charge, on the Debtors' chapter 11 restructuring website maintained by the Claims and Noticing Agent at https://dm.epiq11.com/GCEHoldings (the "Case Website").  Instructions for electronic access to materials contained in the Solicitation Packages will also be provided in the Confirmation Hearing Notice, which will be served on all known Holders of Claims and Interests (regardless of whether such parties are entitled to vote on the Plan) no later than the Solicitation Deadline, in addition to its inclusion in the Solicitation Packages distributed to Holders of the Voting Classes.

17.    As further described in the Solicitation and Voting Procedures, the Ballots included in the Solicitation Packages, will provide instructions for completing the Ballot to vote to accept or reject the Plan, and the Solicitation Packages will include a pre-addressed, postage prepaid reply envelope.  As expressly provided in both the Disclosure Statement and the Ballots, each such voting Holder must submit its Ballot so that it is ***actually received*** by the Claims and Noticing Agent on or before the Voting Deadline for such Holder's vote to be counted.

### B.    Notice to Non-Voting Classes.

18.    The Debtors, with the assistance of the Claims and Noticing Agent, will distribute Non-Voting Status Notices and Opt-Out Forms to Holders of Claims or Interests in the Non-Voting Classes.  As described in more detail herein, each Non-Voting Status Notice and Opt-Out Form will include, among other things:  (a) a form by which Holders can elect to opt out of the

Third-Party Release included in the Plan by checking a prominently featured and clearly labeled box; (b) notice of the Plan Objection Deadline; (c) the Confirmation Hearing Notice; (d) information on how the Holder of the Claim or Interest in the Non-Voting Class can submit an opt-out electronically via E-Ballot; and (e) notice of the date by which the Opt-Out Form must be returned, *i.e.*, the Voting Deadline.

19.     The Debtors request relief to waive the requirement to provide Holders in Class 8 (Intercompany Claims) and Class 9 (Intercompany Interests) with a Solicitation Package, a Non-Voting Status Notice and an Opt-Out Form, or any other type of notice or solicitation materials in connection with solicitation of the Plan.  Intercompany Claims and Intercompany Interests will either be (a) unimpaired or (b) impaired and (i) Reinstated or (ii) set off, settled, distributed, contributed, cancelled, or released, or released for no consideration, in each case, at the discretion of the Debtors.  Thus, the Holders of Intercompany Claims or Intercompany Interests will not be entitled to vote to accept or reject the Plan.

## Basis for Relief

**I.     The Court Should Approve the Disclosure Statement.**

**A.     The Standard for Approval of the Disclosure Statement.**

20.     Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims entitled to vote on the plan.  11 U.S.C. § 1125.  Specifically, section 1125(a)(1) of the Bankruptcy Code provides, in relevant part, as follows:

> '[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical

> investor of the relevant class to make an informed judgment about
> the plan.

11 U.S.C. § 1125(a)(1).

21.    The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision regarding whether or not to vote for the plan. *See, e.g.*, *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan."). Congress intended that such informed judgments would be needed to both negotiate the terms of, and vote on, a plan of reorganization. *Century Glove, Inc.*, 860 F.2d at 100.

22.    "Adequate information" is a flexible standard, based on the facts and circumstances of each case. 11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records."); *see also In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis."); *In re Divine Ripe, L.L.C.*, 554 B.R. 395, 400–01 (Bankr. S.D. Tex. 2016) (discussing factors used to determine the adequacy of information in a disclosure statement); S. Rep. No. 95-989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 ("The information required will necessarily be governed by the circumstances of the case.").

23.    Determining what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code resides within the broad discretion of the court.

*See, e.g.*, *Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 518 (5th Cir. 1998) ("The legislative history of § 1125 indicates that, in determining what constitutes 'adequate information' with respect to a particular disclosure statement, 'both the kind and form of information are left essentially to the judicial discretion of the court' and that 'the information required will necessarily be governed by the circumstances of the case.'" (internal citations omitted)), *cert. denied*, 526 U.S. 1144 (1999); *Tex. Extrusion Corp.*, 844 F.2d at 1157 (finding that a determination of what constitutes adequate information "is largely within the discretion of the bankruptcy court"); *see also In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (listing factors for determining the sufficiency of "adequate information").  Accordingly, the determination of whether a disclosure statement contains adequate information must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case.  *See In re Phx. Petrol. Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

24.     In considering whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as:

  a.  the events that led to the filing of the bankruptcy petition;

  b.  the relationship of the debtor with its affiliates;

  c.  a description of the available assets and their value;

  d.  the debtor's anticipated future;

  e.  the source of information stated in the disclosure statement;

  f.  the present condition of the debtor while in chapter 11;

  g.  claims asserted against the debtor;

  h.  the estimated return to creditors under a hypothetical chapter 7 liquidation;

i.      the future management of the debtor;

j.      the chapter 11 plan or a summary thereof;

k.      financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan;

l.      information relevant to the risks posed to creditors under the plan;

m.     the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

n.      litigation likely to arise in a nonbankruptcy context; and

o.      tax attributes of the debtor.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *see also Metrocraft Pub. Servs., Inc.*, 39 B.R. at 568 (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement).  Disclosure regarding all topics is not necessary in every case.  *See U.S. Brass*, 194 B.R. at 424; *see also Phx. Petrol. Co.*, 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

**B.      The Disclosure Statement Contains Adequate Information in Accordance with Section 1125 of the Bankruptcy Code.**

25.      The Disclosure Statement complies with section 1125 of the Bankruptcy Code because it provides "adequate information" to allow Holders of Claims in the Voting Classes to make informed decisions about whether to vote to accept or reject the Plan.  Specifically, the Disclosure Statement contains a number of categories of information that courts consider as providing "adequate information," including, without limitation:

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Debtors' Restructuring Support Agreement and Plan | A summary of the key components of the Debtors' proposed restructuring, including summaries of the Restructuring Support Agreement and the Plan. | Articles I, VIII, IX |

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Debtors' Corporate History, Structure, and Business Overview | An overview of the Debtors' corporate history, business operations, organizational structure, and capital structure. | Article V |
| Events Leading to the Chapter 11 Filings | An overview of the Debtors' [in-court restructuring efforts in response to its failure to timely operationalize the new facility and move to the next stage of growth], including the negotiations with respect to the Restructuring Support Agreement and the Plan. | Article VI |
| Proposed DIP Financing | A summary of the terms of and negotiations leading to the proposed DIP Facilities. | Article VII |
| Anticipated Events of the Chapter 11 Cases | A summary of the projected course of events in the chapter 11 cases. | Article VII |
| Risk Factors | Certain risks associated with the Debtors' business, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement. | Article XV |
| Solicitation and Voting Procedures | A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan. | Article IV |
| Confirmation of the Plan | Confirmation procedures and statutory requirements for Confirmation and consummation of the Plan. | Article XVI |
| Certain Securities Laws Matters | A description of the applicability of section 1145 of the Bankruptcy Code and the issuance of the New Common Equity under the Plan, if applicable. | Article XVII |
| Certain U.S. Federal Income Tax Consequences of the Plan | A description of certain U.S. federal income tax law consequences of the Plan. | Article XVIII |
| Recommendation | A recommendation by the Debtors that Holders of Claims in the Voting Classes should vote to accept the Plan. | Article XI |

26.    Based on the foregoing, the Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code and addresses the information set forth above in a manner that provides adequate information to Holders of Claims entitled to vote to accept or reject the Plan.   Accordingly, the Disclosure Statement contains "adequate information" and therefore should be approved.

C. **The Disclosure Statement Provides Sufficient Notice of the Injunction, Release, and Exculpation Provisions in the Plan.**

27.     Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction.  Fed. R. Bankr. P. 3016(c).  Similarly, Bankruptcy Rule 2002(c) requires that such disclosure be included in the notice of the hearing to consider confirmation of the chapter 11 plan. Fed. R. Bankr. P. 2002(c).

28.     Article VIII of the Plan and Article XII of the Disclosure Statement describe in detail the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing.  The relevant language in these articles is in bold typeface, making it conspicuous to anyone who reads it.  Moreover, Articles IV and VIII of the Plan and Articles VIII and XII of the Disclosure Statement describe in detail the entities subject to or providing a release under the Plan and the Claims and Causes of Action so released, the entities entitled to exculpation under the Plan, and the entities subject to and covered by a permanent injunction.

29.     Finally, the Ballots, the Non-Voting Status Notice, the Opt-Out Form, and the Confirmation Hearing Notice describe in detail, and in conspicuous, bold typeface, that the Plan contains release, exculpation, and injunction provisions, including a Third-Party Release.  Each of the Disclosure Statement, the Ballot, the Non-Voting Status Notice and Opt-Out Form, and the Confirmation Hearing Notice conspicuously states that any party who does not specifically opt out as a Releasing Party will be bound by the Plan's mutual, reciprocal release provisions. Accordingly, the Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined, released, or exculpated by the Plan, and the

Confirmation Hearing Notice complies with Bankruptcy Rule 2002(c) by conspicuously describing the nature and entities subject to the Plan's release provisions.

**II.     The Court Should Approve the Solicitation and Voting Procedures, Including the Voting and Tabulation Procedures, the Materials, and the Timeline for Soliciting Votes on the Plan.**

**A.     The Standard for Approval of Voting and Tabulation Procedures.**

30.     Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under section (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected the plan.

11 U.S.C. § 1126(c).

31.     Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c). The Debtors propose to use the Solicitation and Voting Procedures, which include specific voting and tabulation requirements and processes (the "Voting and Tabulation Procedures"), as described below, to satisfy these requirements.

**B.     Completion of Ballots.**

32.     To facilitate the process of tabulating Ballots received, the Debtors propose that a Ballot be counted in determining the acceptance or rejection of the Plan only if it satisfies certain criteria. For example, the Voting and Tabulation Procedures provide that the Debtors may not count a Ballot if it is, among other things, filed after the Voting Deadline, illegible, submitted by or on behalf of a holder of a Claim or an Interest that is not entitled to vote on the Plan, unsigned, or not clearly marked. Nevertheless, the Voting and Tabulation Procedures allow the Debtors,

subject to a contrary order of the Court, to waive any such criteria, including with regard to defects or irregularities as to any particular Ballot, either before or after the Voting Deadline, and any such waivers shall be documented in the Voting Report.

      **C.**     **Ballot Tabulation and Voting Procedures.**

      33.     The Voting and Tabulation Procedures establish specific criteria with respect to the general tabulation of Ballots and voting procedures applicable to Holders of Claims entitled to vote, including the manner in which Claim amounts are established for voting purposes.  The Debtors believe that the proposed Voting and Tabulation Procedures will facilitate the Plan confirmation process.  Specifically, the procedures will set forth which Holders of Claims are entitled to vote and their Claim amounts for voting purposes, clarify any obligations of Holders of Claims entitled to vote to accept or reject the Plan, and create a straightforward process by which the Debtors can determine whether they have satisfied the numerosity requirements of section 1126(c) of the Bankruptcy Code.  Accordingly, the Voting and Tabulation Procedures are in the best interests of the Debtors' Estates, Holders of Claims, and other parties in interest, and good cause supports the relief requested herein.

      34.     Further, the Debtors request that the Claims and Noticing Agent be authorized (to the extent not authorized by another order of the Court) to assist the Debtors in (a) distributing the Solicitation Packages, (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims against in the Debtors, (c) responding to inquiries from Holders of Claims and other parties in interest relating to the Disclosure Statement, the Plan, the Solicitation Packages (including the Ballots), and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, (d) soliciting votes on the Plan, and (e) if necessary, contacting creditors and equity holders regarding the Plan.  The Solicitation and Voting Procedures and the authorization of the

Claims and Noticing Agent's assistance therewith comply with Bankruptcy Rule 3018(c) and should be approved.

### D. The Court Should Approve the Forms of Ballots.

35. In accordance with Bankruptcy Rule 3018(c), the Debtors have prepared customized Ballots, and all votes to accept or reject the Plan must be cast using an appropriate Ballot. Although based on Official Form B 314, the Ballots have been modified to (a) address the particular circumstances of the chapter 11 cases and (b) include certain additional information that is relevant and appropriate for Holders of Claims in certain of the Voting Classes to consider in voting to accept or reject the Plan. The proposed Ballots for the Voting Classes are attached as Schedules 3A, 3B, 3C, and 3D to the Order. The forms of Ballots comply with Bankruptcy Rule 3018(c) and should be approved.

36. The Claims and Noticing Agent will accept hard copy Ballots via first-class mail, overnight courier, and hand delivery.[6] In addition, the Debtors request authorization to accept Ballots via electronic, online transmissions through a customized online balloting portal on the Case Website. Parties entitled to vote online may cast an electronic Ballot and electronically sign and submit a Ballot instantly by utilizing the customized, online balloting portal (the "E-Ballot Portal") maintained by the Claims and Noticing Agent on the Case Website. Instructions for electronic, online transmission of Ballots are set forth on the forms of Ballots and at the E-Ballot Portal. The encrypted Ballot data and audit trail created by such electronic submissions shall become part of the record of any Ballot submitted in this manner, and such Holder's electronic

---

[6] The Claims and Noticing Agent will be required to retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon the Claims and Noticing Agent is authorized to destroy and/or otherwise dispose of all paper copies of Ballots; printed solicitation materials, including unused copies of the Solicitation Packages; and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such one (1) year period.

signature will be deemed to be immediately legally valid and effective.  The Debtors request that Ballots submitted via the customized online balloting portal be deemed to contain an original signature.

### E. The Court Should Approve the Form and Distribution of the Solicitation Packages to Parties Entitled to Vote on the Plan.

37.     Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of allowed claims upon approval of a disclosure statement, including the court-approved plan and disclosure statement and notice of the time within which acceptances and rejections of the plan may be submitted. Fed. R. Bankr. P. 3017(d).

38.     In accordance with this requirement, the Debtors propose to distribute the Solicitation Packages to provide Holders of Claims in the Voting Classes with the information they need to make informed decisions with respect to how to vote on the Plan.  Specifically, on or before the Solicitation Deadline, the Debtors will cause the Solicitation Packages to be distributed by first-class mail or email, as applicable, to those Holders of Claims in the Voting Classes.  Each Solicitation Package will include the following materials:

a.     the Order (excluding the schedules thereto, except as set forth below);

b.     the approved Disclosure Statement (attached as Schedule 1 to the Order) and the schedules attached thereto, including the Plan;

c.     the Solicitation and Voting Procedures (attached as Schedule 2 to the Order);

d.     the appropriate Ballot, together with detailed voting instructions with respect thereto and a pre-addressed, postage prepaid return envelope;

e.     the Cover Letter, substantially in the form attached to the Order as Schedule 7;

f.     the Confirmation Hearing Notice substantially in the form attached as Schedule 8 to the Order; and

g.      such other materials as the Court may direct.

39.      The Debtors request that they be authorized to distribute the Plan, the Disclosure Statement, and the Order (without exhibits, except for the Solicitation and Voting Procedures) to Holders of Claims entitled to vote on the Plan in electronic format (*i.e.*, on a flash drive or via email).  **Only** the Ballots, the Cover Letter, and the Confirmation Hearing Notice will be provided in paper copy.  Distribution in this manner will translate into significant monetary savings for the Debtors' estates by reducing printing and postage costs (the Plan, the Disclosure Statement, and the proposed Order collectively total several hundred pages).  It is appropriate to permit a debtor to transmit solicitation documents in electronic format in large chapter 11 cases in the interest of saving printing and mailing costs.  Further, all documents will be available in print on request to the Claims and Noticing Agent and electronically, free of charge, at the Debtors' Case Website.

40.      For purposes of serving the solicitation materials, the Debtors and Claims and Noticing Agent seek authorization to rely on the address and email information, as applicable (for voting and non-voting parties alike), maintained by the Debtors and provided by the Debtors to the Claims and Noticing Agent.  To that end, the Debtors seek the waiver of any obligation for the Debtors or the Claims and Noticing Agent to conduct any additional research for updated addresses or email addresses, as applicable, based on undeliverable solicitation materials (including undeliverable Ballots).

41.      Notwithstanding anything herein to the contrary, the Debtors request that neither they nor the Claims and Noticing Agent be required to mail or email, as applicable, a Solicitation Package or any other materials related to voting or confirmation of the Plan to any person or entity from which the notice of this Motion or other mailed or emailed notice in this case was returned as undeliverable, unless the Claims and Noticing Agent is provided with accurate

addresses or email addresses, as applicable, for such persons or entities before the Voting Record Date.

42.     Additionally, the Debtors will provide complete Solicitation Packages (excluding the Ballots and the Cover Letter) to the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") and to all parties required to be notified pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 2002-1 (the "2002 List") as of the Voting Record Date. Any party that receives solicitation materials in electronic format but would prefer paper format may contact the Claims and Noticing Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense). The Debtors will not mail Solicitation Packages or other solicitation materials to Holders of Claim that have already been paid in full during these chapter 11 cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court.

**F.     The Court Should Approve the Form of Notices to Non-Voting Classes.**

43.     As discussed above, the Non-Voting Classes are ***not*** entitled to vote on the Plan. As a result, they will ***not*** receive Solicitation Packages; instead, the Debtors propose that such parties receive a Non-Voting Status Notice and Opt-Out Form. Specifically, in lieu of solicitation materials, the Debtors propose to provide the following to Holders of Claims and Interests in the Non-Voting Classes:

| Class(es) | Status | Treatment |
|---|---|---|
| 1 and 2 | Unimpaired—Deemed to Accept | Holders of Claims that are presumed to accept the Plan are not entitled to vote. As such, Holders of such Claims will receive a Non-Voting Status Notice and Opt-Out Form, substantially in the form attached to the Order as Schedule 4, in lieu of a Solicitation Package. |

| Class(es) | Status | Treatment |
|---|---|---|
| 7, 10, and 11 | Impaired—Deemed to Reject | Holders of Claims or Interests that are deemed to reject the Plan are not entitled to vote. As such, Holders of such Claims or Interests will receive a Non-Voting Status Notice and Opt-Out Form, substantially in the form attached to the Order as <u>Schedule 5</u>, in lieu of a Solicitation Package. |
| N/A | Disputed Claims | Holders of Claims that are subject to a pending objection by the Debtors are not entitled to vote the disputed portion of their Claim. As such, holders of such Claims will receive a Non-Voting Status Notice and Opt-Out Form, substantially in the form attached to the Order as <u>Schedule 6</u> (which notice shall be served together with such objection). |

44.     Each Non-Voting Status Notice and Opt-Out Form will include, among other things:  (a) information on the recipient's status as a Holder or potential Holder of a Claim or Interest in a Non-Voting Class; (b) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Claims and Noticing Agent free of charge and/or the Court's website via PACER; (c) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in Article VIII of the Plan and the full text of the Third-Party Release; (d) a form by which Holders can elect to opt out of the Third-Party Release included in the Plan by checking a prominently featured and clearly labeled box; (e) notice of the Plan Objection Deadline; (f) the Confirmation Hearing Notice; (g) a postage prepaid, return-addressed envelope in which Holders can return their Opt-Out Form to the Claims and Noticing Agent; (h) information on how the Holder of the Claim or Interest in the Non-Voting Class can submit an opt-out electronically via E-Ballot; (i) notice of the date by which the Opt-Out form must be returned, *i.e.*, the Voting Deadline; and (j) information related thereto.

45.     The Debtors believe that the mailing of Non-Voting Status Notice and Opt-Out Forms in lieu of Solicitation Packages satisfies the requirements of Bankruptcy Rule 3017(d), and the Debtors therefore request that the Court waive the requirement that they mail, or cause to be delivered, a copy of the Solicitation Package to Holders of Claims or Interests presumed to accept or deemed to reject the Plan.  Distributing the Solicitation Packages to non-voting creditors is an unnecessary expense.  The Debtors' cash should be preserved for the benefit of all stakeholders—their resources should not be diverted to satisfy a mailing requirement that will not bring a benefit to any party.  The Debtors will also make the Solicitation Package (excluding the Ballots) available at no cost on the Case Website.

46.     The Debtors further request that they not be required to mail Solicitation Packages, other solicitation materials, or a Non-Voting Status Notice and Opt-Out Form to:  (a) Holders of Claims that have already been paid in full during the chapter 11 cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court; (b) any party to whom a notice of the hearing regarding the Court's approval of the Disclosure Statement was sent but was subsequently returned as undeliverable; and (c) Holders of Class 8 (Intercompany Claims) or Class 9 (Intercompany Interests).

47.     Holders of Claims and Interests in Non-Voting Classes will have adequate time to consider the Plan and the Disclosure Statement and opt out of the releases thereunder before the Voting Deadline.  Accordingly mailing Non-Voting Status Notices and Opt-Out Forms in lieu of Solicitation Packages to the Holders of Claims and Interests in Non-Voting Classes complies with Bankruptcy Rule 3017(d) and should be approved.

**G.     The Court Should Approve the Notice of Confirmation Hearing.**

48.     The Debtors will serve the Confirmation Hearing Notice on all known Holders of Claims or Interests and the 2002 List (regardless of whether such parties are entitled to vote on

the Plan) by no later than three (3) business days following the entry of the Order (or as soon as reasonably practicable thereafter), which will provide all parties in interest with twenty-eight (28) days' notice of the Plan Objection Deadline and thirty-five (35) days' notice of the Confirmation Hearing.   The Confirmation Hearing Notice will include the following: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Claims and Noticing Agent and/or the Court's website via PACER; (b) notice of the Voting Deadline; (c) notice of the date by which the Debtors will file the Plan Supplement; (d) notice of the Plan Objection Deadline; (e) notice of the Confirmation Hearing Date and information related thereto; and (f) as described above, notice of the Plan's release provisions and the effects thereof.

49.     Bankruptcy Rule 2002(*l*) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  Therefore, in addition to the foregoing distribution of the Confirmation Hearing Notice, the Debtors will publish the Publication Notice on the Publication Deadline, or as soon as reasonably practicable thereafter, on one occasion in *The New York Times* (national edition) and *The New York Times* (international edition).  The Publication Notice will provide sufficient notice of, among other things, the entry of the Order, the Voting Deadline, the Plan Objection Deadline, and the Confirmation Hearing to parties who did not otherwise receive notice thereof by mail.  Additionally, service and publication of the Confirmation Hearing Notice comports with the requirements of Bankruptcy Rule 2002 and should be approved.

**H.     The Court Should Approve the Plan Supplement Notice.**

50.     The Plan defines "Plan Supplement" to mean "the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be

altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be filed by the Debtors prior to the Confirmation Hearing to the extent available, and any additional documents filed prior to the Effective Date as amendments to the Plan Supplement, including the following, as applicable: (a) the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the Schedule of Rejected Executory Contracts and Unexpired Leases; (c) the Schedule of Retained Causes of Action; (d) the New Organizational Documents; (e) the Exit Facilities Documents; (f) the New Preferred Equity Documents; (g) the Restructuring Transactions Memorandum; and (h) to the extent known, the identity of the members of the New Board."

51.     To ensure that all Holders of Claims receive notice of the Debtors' filing of the Plan Supplement, the Debtors propose to send the Plan Supplement Notice on the date the Debtors file the Plan Supplement, or as soon as practicable thereafter.  Accordingly, the Plan Supplement Notice should be approved.

**I.      The Court Should Approve the Notices to Contract and Lease Counterparties.**

52.     Article V of the Plan provides that, on the Effective Date, except as otherwise provided in the Plan, all Executory Contracts or Unexpired Leases that are not otherwise rejected will be deemed assumed by the applicable Reorganized Debtor or Reorganized GCEH in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that:  (a) are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (b) previously expired or terminated pursuant to their own terms; (c) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (d) are the subject of a motion to reject that is pending on the Effective Date; or (e) have an ordered or requested effective date of rejection that is after the Effective Date.

53.     To ensure that counterparties to Executory Contracts and Unexpired Leases receive notice of assumption or rejection of their Executory Contract or Unexpired Lease (and any corresponding Claim against the Debtors pursuant to section 365(b) of the Bankruptcy Code) pursuant to the Plan, the Debtors will mail an Assumption Notice or a Rejection Notice, as appropriate, within the time periods specified in the Plan.  The Assumption Notices and Rejection Notices, attached to the Order as Schedules 10 and 11 respectively, should be approved.

**J.      The Court Should Approve the Voting Record Date and Voting Deadline.**

54.     Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing."  Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.  Fed. R. Bankr. P. 3018(a) ("[A]n equity security holder or creditor whose claim is based on a security of record shall not be entitled to accept or reject a plan unless the equity security holder or creditor is the holder of record of the security on the date the order approving the disclosure statement is entered or on another date fixed by the court.").

55.     The Debtors request that the Court exercise its authority under Bankruptcy Rules 3017(d) and 3018(a) to establish **May 16, 2025**, as the Voting Record Date. Only Holders of Claims as of the Voting Record Date shall be entitled to vote to accept or reject the Plan.  Moreover, the Debtors propose that, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and, if the holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim ***only if***: (a) all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been

completed by the Voting Record Date; or (b) the transferee files by the Voting Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim or Interest is transferred after the Voting Record Date, the transferee of such Claim or Interest shall be bound by any vote on the Plan made by the holder of such Claim or Interest as of the Voting Record Date.

56.     The Debtors request that, after distribution of Solicitation Packages to Holders of Claims entitled to vote on the Plan by the Solicitation Deadline, the Court require that all Holders of Claims entitled to vote on the Plan complete, execute, and return their customized Ballots (in accordance with the instructions on the Ballots) so that they are ***actually received*** by the Claims and Noticing Agent on or before the Voting Deadline, which the Debtors request be established as June 25, 2025, at 4:00 p.m., prevailing Central Time.

57.     The foregoing timing and materials will afford Holders of Claims entitled to vote on the Plan sufficient time to review and analyze such materials and subsequently make an informed decision as to whether to vote to accept or reject the Plan before the Voting Deadline, consistent with the requirements of the applicable Bankruptcy Rules.     *See* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain holders of claims).  The Voting Record Date and Voting Deadline comply with Bankruptcy Rule 3017(d) and, therefore, should be approved.

## II.     The Court Should Approve the Procedures for Filing Objections to the Plan.

1.     Section 1128 of the Bankruptcy Code provides that a court shall hold a hearing on confirmation of a plan and provides that parties in interest can object to confirmation. 11 U.S.C. § 1128.   Bankruptcy Rules 2002(b) and (d) require that parties be given at least

twenty-eight (28) days' notice of the time fixed for filing objections and for the hearing to consider confirmation of a chapter 11 plan. *See* Fed. R. Bankr. P. 2002.  The Debtors request that the Court establish **4:00 p.m. (prevailing Central Time) on June 25, 2025**, as the Plan Objection Deadline, which will provide all parties in interest with at least twenty-eight (28) days' notice of the Plan Objection Deadline.

2.      The Debtors also request that the Court direct the manner in which parties in interest may object to Confirmation of the Plan.  Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1).  The Confirmation Hearing Notice will require that objections to Confirmation of the Plan or requests for modifications to the Plan, if any, must:

      a.      be in writing;

      b.      conform to the Bankruptcy Code, Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court;

      c.      state, with particularity, the legal and factual bases for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and

      d.      be filed with the Court on or before the Plan Objection Deadline.

3.      The Debtors also request that they (and other parties in support of the Plan, including the Consenting Stakeholders) be permitted to file a reply to any objections to Confirmation of the Plan and a memorandum in support of Confirmation before the Confirmation Hearing Date.

### Non-Substantive Modifications

4.      The Debtors request authorization to make non-substantive changes to the Plan, Disclosure Statement, Solicitation Procedures, Ballots, Solicitation Packages, any notice attached to the Order, and any related documents without further order of the Court, including changes to

correct typographical and grammatical errors, if any, and to make conforming changes to the Plan, the Disclosure Statement, and any other materials in the Solicitation Packages before distribution.

### **Notice**

5.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the agent under the Debtors' DIP Facility and counsel thereto; (d)  counsel to the RCF Lender and Vitol; (e) counsel to the Prepetition Term Loan Agent; (f) counsel to CTCI; (g) the United States Attorney's Office for the Southern District of Texas; (h) the Internal Revenue Service; (i) the Environmental Protection Agency; (j) the United States Securities and Exchange Commission; (k)  the state attorneys general for states in which the Debtors conduct business; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
Dated: April 16, 2025

/s/ Jason L. Boland

**NORTON ROSE FULBRIGHT US LLP**
Jason L. Boland (SBT 24040542)
Robert B. Bruner (SBT 24062637)
Julie Harrison (SBT 24092434)
Maria Mokrzycka (SBT 24119994)
1550 Lamar Street, Suite 2000
Houston, Texas 77010-3095
Telephone:      (713) 651-5151
Facsimile:      (713) 651-5246
Email:      jason.boland@nortonrosefulbright.com
      bob.bruner@nortonrosefulbright.com
      julie.harrison@nortonrosefulbright.com
      maria.mokrzycka@nortonrosefulbright.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Brian Schartz, P.C. (TX Bar No. 24099361)
Ross J. Fiedler (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:      jsussberg@kirkland.com
      bschartz@kirkland.com
      ross.fiedler@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Peter A. Candel (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:      peter.candel@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

## <u>Certificate of Service</u>

I certify that on April 16, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas. Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' proposed claims agent.

*/s/ Jason L. Boland*
Jason L. Boland