## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GLOBAL CLEAN ENERGY HOLDINGS, INC., *et al.*,[1] | ) ) | Case No. 25-90113 (ARP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER
### AUTHORIZING THE RETENTION AND COMPENSATION OF CERTAIN
### PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (this "Motion"):[2]

### Relief Requested

1.     The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"), (a) authorizing the Debtors to retain and compensate certain law firms, attorneys, accountants, consultants, and other non-attorney professionals utilized in the ordinary course of

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/GCEHoldings.  The location of Debtor Global Clean Energy Holdings, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is:  6451 Rosedale Highway, Bakersfield, California 93308.

[2]    A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Noah Verleun, Chief Executive Officer of Global Clean Energy Holdings, Inc., in Support of the Debtors' Chapter 11 Petitions* [Docket No. 2] and the *Declaration of John Walsh, Managing Director of Alvarez & Marsal North America, LLC, in Support of the Debtors' First Day Motions* [Docket No. 3] (collectively, the "First Day Declarations").  Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declarations.

business (each, an "OCP," and collectively, the "OCPs"), pursuant to the compensation procedures set forth in the Order (the "Compensation Procedures"), and (b) granting related relief.

## Jurisdiction and Venue

2.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Order of Reference to Bankruptcy Judges*, dated May 24, 2012, from the United States District Court for the Southern District of Texas.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent to the Court's entry of a final order in connection with this Motion.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The bases for the relief requested herein are sections 105(a), 327, 328, and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## Background

5.  Global Clean Energy Holdings, Inc. (together with its Debtor and non-Debtor subsidiaries, "Global Clean") is a vertically integrated company focused on producing ultra-low carbon renewable fuels from its patented varieties of *Camelina sativa* ("Camelina"), a nonfood feedstock.  This unique "farm to fuel" business model allows Global Clean to achieve greater efficiencies throughout the value chain, lower the carbon intensity of its finished product, and provide a solution to the "food versus fuel" dilemma through its focus on a feedstock that does not compete with food.  Global Clean currently owns the world's largest portfolio of patented Camelina genetics and has established operations across the globe to plant, process, transport, and

refine their Camelina into biomass feedstock, biofuel oil, and renewable fuel, including at its state-of-the-art renewable fuels facility in Bakersfield, California.  Global Clean employs or retains over 150 people and, in 2024, managed contracts with hundreds of growers around the world that planted more than 124,000 acres of Camelina in support of its worldwide operations.

6.      On April 16, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the Debtors, their businesses, and the facts and circumstances of the Debtors' chapter 11 cases is set forth in greater detail in the First Day Declarations.

7.      On April 16, 2025, this Court entered an order directing the joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1 [Docket No. 27].  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On April 28, 2025, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [Docket Nos. 85 and 87] (the "Committee").  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

**The Ordinary Course Professionals**

8.      The Debtors retain the OCPs, which consist of various law firms, attorneys, accountants, consultants, and other non-attorney professionals used in the ordinary course of their businesses.  The OCPs provide services to the Debtors in a variety of matters unrelated to these chapter 11 cases, including, but not limited to, specialized legal advice, accounting and tax services, and certain business advisory and consultant services.

9.      The OCPs have significant knowledge, expertise, and familiarity with the Debtors and their operations.  Without the OCPs' knowledge, expertise, and familiarity in certain matters, the Debtors would incur additional and unnecessary expenses in seeking out and finding replacements for the existing OCPs.  In addition, each of the OCPs provides essential services to the Debtors at market rates and in many instances discounted market rates.  The continued employment and compensation of the OCPs is in the best interests of their estates, creditors, and other parties in interest.  For the avoidance of doubt, the Debtors are not requesting authority to pay prepetition amounts owed to OCPs.

10.     Nonexclusive lists of the Debtors' current OCPs are attached as <u>Exhibit 1</u>, <u>Exhibit 2</u>, and <u>Exhibit 3</u> to the Order (each as may be amended or supplemented, collectively, the "<u>OCP Lists</u>") and are incorporated herein by reference.  The Debtors may also seek to employ additional OCPs as necessary during these chapter 11 cases, subject to the Compensation Procedures (as described below).

### The Compensation Procedures

11.     The Compensation Procedures establish a streamlined process for the postpetition retention and compensation of OCPs.  The Compensation Procedures will permit the Debtors to employ OCPs upon the filing of a declaration of disinterestedness, substantially in the form attached as <u>Exhibit 4</u> to the Order (a "<u>Declaration of Disinterestedness</u>"), and upon the expiration of a reasonable objection period for parties in interest, including the U.S. Trustee and the Committee.  Among other things, each Declaration of Disinterestedness will state that the respective OCP does not have any material interest adverse to the Debtors or their estates with respect to the matter on which such OCP is proposed to be employed.

12.     The Compensation Procedures further provide that the Debtors shall be authorized to pay, without formal application to the Court by any OCP, 100 percent of the fees, including, if

necessary, advancing any reasonable postpetition monthly retainers or prepayments to the OCPs in the ordinary course of business consistent with past practice, and reimbursable expenses to each of the OCPs retained pursuant to these procedures (including the filing of a Declaration of Disinterestedness) upon the OCP's submission to the Debtors of an appropriate invoice setting forth in reasonable detail (a) the nature of the services rendered and expenses incurred after the Petition Date or (b) the amount of retainer or prepayment requested; *provided* that any OCP historically provided with such an advancement shall provide notice of such practice on such OCP's Declaration of Disinterestedness and upon the expiration of the applicable objection period the Debtors shall be authorized to make any reasonable such advancement to such OCP in the ordinary course of business and consistent with past practice.  While these chapter 11 cases are pending, the fees of each OCP set forth on Exhibit 1 to the Order, including any postpetition monthly retainers or prepayments and excluding costs and reimbursable expenses, may not exceed $150,000 per month on average over a rolling three-month period (the "Tier 1 OCP Cap"), the fees of each OCP set forth on Exhibit 2 to the Order, including any postpetition monthly retainers or prepayments and excluding costs and reimbursable expenses, may not exceed $50,000 per month on average over a rolling three-month period (the "Tier 2 OCP Cap"), and the fees of each OCP set forth on Exhibit 3 to the Order, including any postpetition monthly retainers or prepayments and excluding costs and reimbursable expenses, may not exceed $15,000 per month on average over a rolling three-month period (the "Tier 3 OCP Cap," and together with the Tier 1 OCP Cap and the Tier 2 OCP Cap, the "OCP Caps").  In addition, the Debtors seek authority to retain additional OCPs, as the need arises, by filing a supplement to the OCP Lists that identifies such additional OCPs and serving the same on the OCP Notice Parties.

13.     To the extent an OCP seeks compensation in excess of the applicable OCP Cap (the "Excess Fees"), the OCP shall (a) file with the Court a *Notice of Fees in Excess of the OCP Cap* (the "Notice of Excess Fees") and an invoice setting forth, in reasonable detail, the nature of the services rendered and disbursements actually incurred and (b) serve the Notice of Excess Fees on the OCP Notice Parties.  Parties in interest shall then have fourteen (14) days to object to the Notice of Excess Fees.  If no objection is filed within fourteen (14) days, the Excess Fees shall be deemed approved, and the OCP may be paid 100 percent of its fees, including any reasonable postpetition retainer or prepayments, and 100 percent of its expenses without the need to file a fee application.

14.     Beginning with the period ending on June 30, 2025, and in three-month increments thereafter while these chapter 11 cases are pending (each, a "Quarter"), the Debtors shall file with the Court and serve on the OCP Notice Parties, no later than thirty (30) days after the conclusion of such Quarter, a statement with respect to each OCP paid during the immediately preceding Quarter.  Each OCP's statement shall include the following information:  (a) the name of the OCP; (b) the aggregate amounts paid as compensation or advanced for services rendered and reimbursement of expenses incurred by that OCP during the reported Quarter; (c) all postpetition payments made to that OCP to date; and (d) a general description of the services rendered by that OCP.  The initial OCP statement shall cover the period beginning on the Petition Date and ending June 30, 2025, and shall be filed no later than July 30, 2025.

15.     The Compensation Procedures shall not apply to those professionals for whom the Debtors have filed (or will file) separate applications for approval of employment, such as the Debtors' proposed bankruptcy counsel or restructuring advisors.

**Basis for Relief**

16.     Section 327(a) of the Bankruptcy Code requires court approval for the employment of "professional persons," retained to represent or perform services of the estate.   11 U.S.C. § 327(a).  In determining whether an entity is a "professional" within the meaning of section 327, courts generally consider whether such entity is involved in the actual reorganization effort, rather than a debtor's ongoing business operations.  *See, e.g., Comm. of Asbestos-Related Litigants v. John-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1986) ("[T]he phrase 'professional persons,' as used in § 327(a), is a term of art reserved for those persons who play an intimate role in the reorganization of a debtor's estate.").  In making this determination, courts often consider the following factors in determining whether an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code:

   a.   whether the entity controls, manages, administers, invests, purchases, or sells assets that are significant to the debtor's reorganization;

   b.   whether the entity is involved in negotiating the terms of a plan of reorganization;

   c.   whether the entity is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;

   d.   whether the entity is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate;

   e.   the extent of the entity's involvement in the administration of the debtor's estate; and

   f.   whether the entity's services involve some degree of special knowledge or skill, such that it can be considered a "professional" within the ordinary meaning of the term.

*See*, *e.g.*, *In re First Merchs. Acceptance Corp.*, 1997 WL 873551, at *3 (D. Del. Dec. 15, 1997) (listing factors); *In re Fretheim*, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (finding that only

7

those professionals involved in the actual reorganization effort or administration of the debtor's estate, rather than the debtor's ongoing business, require approval under section 327 of the Bankruptcy Code).

17.     The foregoing factors must be considered as a whole when determining if an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code.  None of the factors alone is dispositive.  *See First Merchs.*, 1997 WL 873551 at *3 ("In applying these factors, the Court stresses that no one factor is dispositive and that the factors should be weighed against each other and considered in [total].").

18.     Additionally, section 327(e) of the Bankruptcy Code provides that "[t]he trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtors or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e).

19.     Upon consideration of the above-listed factors, and because the OCPs will not be involved in the administration of these chapter 11 cases, the Debtors do not believe that the OCPs are "professionals" requiring formal retention under section 327(a) of the Bankruptcy Code. Instead, the OCPs will provide services in connection with the Debtors' ongoing business operations, which services are ordinarily provided by non-bankruptcy professionals.  Nevertheless, to provide clarity and an opportunity for oversight by stakeholders in these chapter 11 cases, the Debtors seek the relief requested herein to establish definitive mechanisms for retention and payment of the OCPs pursuant to the Compensation Procedures and thereby avoid any subsequent controversy with respect thereto.

20.     The Debtors and their estates would be well served by the continued retention of the OCPs because of their established relationships with the Debtors and understanding of the Debtors and their operations and legal issues.  In light of the number of OCPs and the significant costs associated with the preparation of retention applications under sections 327, 328, and 330 of the Bankruptcy Code for OCPs who will receive relatively modest fees, it would be impractical and inefficient for the Debtors and their legal advisors to prepare and submit individual applications and proposed retention orders for each OCP.  The retention and compensation of the OCPs in accordance with the Compensation Procedures avoids any disruption in the professional services that are required for the day-to-day operation of the Debtors' businesses and is thus in the best interests of all creditors and parties in interest.

21.     Although some of the OCPs may hold unsecured claims against the Debtors in connection with services rendered to the Debtors prepetition, the Debtors do not believe that any of the OCPs hold interests materially adverse to the Debtors, their creditors, or other parties in interest.  In any event, the Compensation Procedures include a requirement that each OCP file a Declaration of Disinterestedness and be subject to a reasonable objection period before an OCP can be compensated.

### Notice

22.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the agent under the Debtors' DIP Facilities and counsel thereto; (d) counsel to the RCF Lenders and Vitol; (e) counsel to the Prepetition Term Loan Agent; (f) counsel to CTCI; (g) the United States Attorney's Office for the Southern District of Texas; (h) the Internal Revenue Service; (i) the Environmental Protection Agency; (j) the United States

Securities and Exchange Commission; (k) the state attorneys general for states in which the Debtors conduct business; (l) the OCPs; (m) the Committee; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
Dated: April 29, 2025

/s/ Jason L. Boland

**NORTON ROSE FULBRIGHT US LLP**
Jason L. Boland (SBT 24040542)
Robert B. Bruner (SBT 24062637)
Julie Harrison (SBT 24092434)
Maria Mokrzycka (SBT 24119994)
1550 Lamar Street, Suite 2000
Houston, Texas 77010-3095
Telephone:      (713) 651-5151
Facsimile:      (713) 651-5246
Email:          jason.boland@nortonrosefulbright.com
                bob.bruner@nortonrosefulbright.com
                julie.harrison@nortonrosefulbright.com
                maria.mokrzycka@nortonrosefulbright.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Brian Schartz, P.C. (TX Bar No. 24099361)
Ross J. Fiedler (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com
                bschartz@kirkland.com
                ross.fiedler@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Peter A. Candel (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          peter.candel@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**<u>Certificate of Service</u>**

I certify that, on April 29, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Jason L. Boland*

Jason L. Boland